

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-10-2006

# Jilin Pharm USA Inc v. Secretary Homeland

Precedential or Non-Precedential: Precedential

Docket No. 05-2788

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Jilin Pharm USA Inc v. Secretary Homeland" (2006). *2006 Decisions.* Paper 1003.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1003

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2788

———

JILIN PHARMACEUTICAL USA, INC.;
WEI ZHAO, (File #: A76 104 871)

<u>Appellants</u>

v.

MICHAEL CHERTOFF, Secretary of the United States
Department of Homeland Security;[*] ALBERTO
GONZALES, Attorney General of the United States, U.S.
Department of Justice;[**] EDUARDO AGUIRRE, JR.,
Director of the United States Citizenship and Immigration
Services; UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, BUREAU OF
DEPARTMENT OF HOMELAND SECURITY; UNITED
STATES OF AMERICA

———

[*]    Substituted pursuant to Rule 43(c)(2), Federal Rules of
Appellate Procedure.

[**]    Substituted pursuant to Rule 43(c)(2), Federal Rules of
Appellate Procedure.

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 04-cv-05678)
District Judge: Honorable Faith S. Hochberg

———

Argued April 3, 2006
Before:  RENDELL, SMITH, and ALDISERT, <u>Circuit Judges</u>

(Filed: May 10, 2006)

Isaac Fromm, Esq.
Martin L. Rothstein, Esq. (ARGUED)
Barst & Mukamal, LLP
2 Park Avenue, 19th Floor
New York, New York 10016

    Counsel for Appellants

Pamela Perron, Esq.
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

David V. Bernal, Esq.
Barry J. Pettinato, Esq. (ARGUED)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

Counsel for Appellee

---

**OPINION**

---

ALDISERT, Circuit Judge.

In Soltane v. United States Department of Justice, 381 F.3d 143 (3d Cir. 2004), we construed the statute governing the *denial* of a visa application, 8 U.S.C. § 1153(b)(4), and held that 8 U.S.C. § 1252(a)(2)(B)(ii) did not strip the district court of jurisdiction to review this administrative decision. This appeal by Jilin Pharmaceutical USA, Inc. ("Jilin USA") and Wei Zhao from an order of the District Court for the District of New Jersey dismissing their complaint for lack of subject matter jurisdiction does not involve a denial of a visa application, but rather a *revocation* of a visa already granted. This requires us to compare the language of the separate statutes dealing with visa denial and revocation, and, having done so, we conclude that a distinction exists between the two statutes in the quanta of discretion conferred upon the Secretary of Homeland Security. Accordingly, we will affirm the order of the District Court holding that we lack jurisdiction to review this discretionary determination. We will affirm also the Court's determination that it lacked jurisdiction to hear Appellants' Fifth Amendment due process claims.

I.

3

Appellant Wei Zhao is a native and citizen of the People's Republic of China. Appellant Jilin USA, which was incorporated in 1996 in the state of New Jersey, is a wholly owned United States subsidiary of Jilin Ltd. In 1996, Jilin Ltd. transferred Zhao, who was manager of the company's import and export division, from China to the United States to serve as president and chief executive officer of Jilin USA. On July 26, 1996, in accordance with this plan, Jilin USA filed an employment-based non-immigrant petition, Form I-129, on behalf of Zhao to classify him as an L-1A non-immigrant intracompany transferee. The supporting documentation asserted that Zhao was an executive employee of Jilin Ltd. and that he was transferring to Jilin USA in an executive and managerial capacity, as defined at 8 U.S.C. § 1101(a)(44)(A) & (B). The Immigration and Naturalization Service ("INS")[1] approved this request on October 29, 1996, granting Zhao L-1A status until October 28, 1997. On November 5, 1997, the INS approved a petition to extend Zhao's L-1A status until October 28, 1999.

Following approval of this second petition, on August 29, 1998, Jilin USA filed a Form I-140 Immigrant Petition for Alien Worker on behalf of Zhao and sought to classify Zhao under the E-1-3 visa category, which permits executive and managerial intracompany transferees to become permanent residents of the

---

[1] On March 1, 2003, the INS ceased to exist as an independent agency within the United States Department of Justice and the INS's functions were transferred to the Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (2002).

United States under 8 U.S.C. § 1153(b)(1)(C). On December 16, 1998, the INS approved the petition and granted the visa. Upon that approval of the Form I-140, on July 7, 1999, Zhao and his immediate family filed Form I-485 applications for adjustment of status from non-immigrant to that of lawful permanent resident.

On September 13, 2000, the INS notified Jilin USA and Zhao that it intended to revoke its prior approval of the Form I-140 visa petition. The INS was unconvinced that Zhao had been and would be employed in a primarily executive or managerial capacity. On April 5, 2001, the INS revoked Zhao's visa, noting that Jilin USA and Zhao had provided only a vague description of his job and had not established that he worked in an executive or managerial capacity.

Jilin USA appealed to the Office of Administrative Appeals ("OAA") and submitted a more detailed description of Zhao's duties. On January 30, 2003, holding that the "record contains insufficient evidence to demonstrate that [Zhao] has been employed in a primarily managerial or executive capacity," the OAA affirmed the visa revocation and dismissed the appeal. The OAA subsequently denied Jilin and Zhao's motion to reopen on August 24, 2004.[2]

On November 15, 2004, Jilin USA and Zhao filed a complaint for mandatory and declaratory relief in the United

_____

[2] On July 16, 2003, the INS also denied Zhao's Form I-485 application, because the record did not indicate that he was the beneficiary of an "approved immigrant petition."

States District Court for the District of New Jersey. The complaint "challenge[d] the legally incorrect and unjustifiable" revocation of the approval of Zhao's visa petition. Concerned about its jurisdiction, the District Court ordered the parties to file briefs detailing the statutory provision giving rise to federal court jurisdiction to review the administrative decision to revoke Zhao's visa. Both parties submitted timely responses.[3]

Holding that it was "barred from asserting jurisdiction over visa revocations at the discretion of the Attorney General even when the visa holder is already in the United States," the District Court dismissed the complaint on February 25, 2005, for lack of subject matter jurisdiction. In making this determination, the District Court observed that this was a matter of first impression in this Circuit and accepted the analysis and conclusion of the Court of Appeals for the Seventh Circuit's opinion in El-Khader v. Monica, 366 F.3d 562 (7th Cir. 2004) (holding that § 1252(a)(2)(B)(ii) precludes judicial review of the revocation of a visa petition under § 1155).

Arguing that the Court had committed a clear error of

_____

[3] On January 12, 2005, the Court also ordered briefing upon recent amendments made by Congress to § 1155 and the impact of the Second Circuit's decision in Firstland International, Inc. v. United States INS, 377 F.3d 127 (2d Cir. 2004) (deciding whether § 1252(a)(2)(B) prevented courts from reviewing a decision of the Attorney General, made pursuant to § 1155, to revoke the approval of an immigrant visa petition after the beneficiary was inside the United States). Both parties filed timely responses.

6

law, that the controlling law had changed, and that a manifest injustice would result if the February 25 decision were not reversed, Jilin USA and Zhao filed a motion for reargument with the District Court on March 7, 2005. The primary focus in their motion was the Court of Appeals for the Ninth Circuit's opinion in ANA International, Inc. v. Way, 393 F.3d 886 (9th Cir. 2004), in which the court rejected the Seventh Circuit's logic and held that § 1252(a)(2)(B)(ii) does not deny jurisdiction to review a revocation decision made pursuant to § 1155. The District Court rejected the motion on May 11, 2005, concluding that El-Khader was more persuasive than the analysis of ANA International. This appeal followed.[4]

---

[4] Pursuant to 28 U.S.C. § 1291, we have jurisdiction to hear this appeal of a final judgment. Because Jilin USA and Zhao are appealing the denial of their motion for reargument, we examine the District Court's denial of that motion for an abuse of discretion. Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). We exercise plenary review over a district court's determination that it lacks subject matter jurisdiction, and when "reviewing a facial challenge to this Court's subject matter jurisdiction, we accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. " In re Kaiser Group Intern. Inc., 399 F.3d 558, 561 (3d Cir. 2005) (citation omitted). Finally, we review *de novo* the District Court's statutory interpretations and conclusions of law. In re Ferandos, 402 F.3d 147, 150 (3d Cir. 2005).

II.

When analyzing our jurisdiction to review the administrative decision to revoke a visa, the starting point for our discussion is found in the text of 8 U.S.C. § 1252(a)(2)(B)(ii).  Therein, Congress has dictated that no court shall have jurisdiction to review:

> any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a).

8 U.S.C. § 1252(a)(2)(B)(ii).[5]  By its terms it therefore becomes necessary always to examine "the authority for which is

---

[5]  Since the enactment of the REAL ID Act, this jurisdiction-stripping provision applies "regardless of whether the [administrative] judgment, decision, or action is made in removal proceedings."  REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., § 101(f)(2), 119 Stat. 302, 305 (2005) (codified as amended at 8 U.S.C. § 1252(a)(2)(B)).  This amendment applies as of the date of the enactment of the REAL ID Act "to all cases pending before any court on or after such date,"  § 101(h)(4), 119 Stat. at 306, and resolved whether § 1252(a)(2)(B) applied outside the context of removal proceedings. See ANA Int'l, 393 F.3d at 891 n.3 (describing conflicting holdings of courts on this issue).

specified," that is to say, the statute setting forth the nature of the administrative discretion granted.

## A.

We now must compare the statute that was before this Court in <u>Soltane</u> with the one governing the case at bar. In <u>Soltane</u>, the government contended that the following provision deprived the district court of jurisdiction to review the denial of a visa:

> Visas *shall* be made available, in a number not to exceed 7.1 percent of such worldwide level, to qualified special immigrants described in [8 U.S.C. § 1101(a)(27)] . . . of which not more than 5,000 may be made available in any fiscal year to special immigrants described in subclause (II) or (III) of [8 U.S.C. § 1101(a)(27)(C)(ii)(II) or (III)], and not more than 100 may be made available in any fiscal year to special immigrants, excluding spouses and children, who are described in [8 U.S.C. § 1101(a)(27)(M)].

8 U.S.C. § 1153(b)(4) (emphasis added). We held that this language was not specific enough to vest unreviewable discretion in the Attorney General.

We concluded that the "key to § 1252(a)(2)(B)(ii) lies in its requirement that the discretion giving rise to the jurisdictional bar must be 'specified' by *statute*," and that whether such a specification has been made is determined "by examining the

9

statute as a whole." Id. at 146-147 (emphasis added). We cautioned, however, that "the use of marginally ambiguous statutory language, without more, is [inadequate] to 'specif[y]' that a particular action is within the Attorney General's discretion for the purposes of § 1252(a)(2)(B)(ii)." Id. at 147. That an agency has "discretion" under Chevron to interpret the statute it administers does not mean courts lack jurisdiction to review its interpretations. Id. at 148. Such "ubiquitous" discretion was not what Congress intended by § 1252(a)(2)(B)(ii). Id. Indeed, if the term "discretion" were construed too broadly, "it is hard to imagine any action by the Attorney General under the relevant title that would *not* be deemed discretionary." Id. at 148 n.3.

## B.

We now turn to the discretion-vesting statute governing the revocation of a visa. It is found in 8 U.S.C. § 1155:

> The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title.

8 U.S.C. § 1155 (2005).[6]

---

[6] Prior to December 2004, this provision vested the Attorney General, not the Secretary of Homeland Security, with the authority to revoke approval of a petition. Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 5304(c), 118 Stat. 3638, 3736 (2004). At the same time,

Even by a most cursory comparison of the statutes it is apparent that § 1155 is light-years away from the provision that was before us in <u>Soltane</u> in terms of the discretion it specifies is in the hands of the Secretary. That being so, we now address the central question now presented in this appeal, whether § 1252(a)(2)(B)(ii) deprives courts of jurisdiction to review administrative decisions made pursuant to 8 U.S.C. § 1155.

### III.

### A.

We are not the first court of appeals to address the applicability of the jurisdictional bar of § 1252(a)(2)(B)(ii) to administrative decisions made pursuant to § 1155. The Court of Appeals for the Seventh Circuit first took up the visa revocation issue in <u>El-Khader</u>, where the court observed that § 1155 states that the Attorney General "may" revoke approval of a petition, and may do so "at any time." 366 F.3d at 567. In the court's view, "[t]his language plainly signifies a discretionary decision." <u>Id.</u> Accordingly, it held that the discretionary nature of a revocation of approval "is apparent from the plain language of

---

Congress also streamlined the statute by striking the statute's notice requirement that limited the time at which the Attorney General could revoke approval of a petition. <u>Id.</u> These alterations were to apply to all revocations made under § 1155 before, on or after December 17, 2004. § 5304(d), 118 Stat. at 3736.

[§ 1155]."[7]  Id. at 567.

In ANA International, a split panel of the Court of Appeals for the Ninth Circuit held otherwise.  Basing its analysis upon the premise that there is a "strong presumption in favor of judicial review of administrative action," it first determined that it would give a narrow construction to § 1252(a)(2)(B).  393 F.3d at 891 (quoting INS v. St. Cyr, 533 U.S. 289, 298 (2001)).  Accordingly, it determined that the only acts "immunized from review by § 1252" are those constituting "'matters of pure discretion, rather than discretion guided by legal standards.'"  Id. (quoting Spencer Enters., Inc. v. United States, 345 F.3d 683, 690 (9th Cir. 2003)).

Addressing § 1155, the ANA International court then held that within this statute Congress clearly "authorize[d] some measure of discretion" by using the phrase "may, at any time, for what he deems to be."  Id. at 893.  But, by incorporating the "good and sufficient cause" language, the court also concluded that Congress established a standard that restricts the discretion

[7] The Court also rejected the argument that the broad statutory language of § 1155 could be limited by INS precedent.  Id. at 568.  In rejecting the argument that INS precedent restricts and redefines the discretionary nature of § 1155, the court held that the INS regulations guiding the Attorney General in the granting of a visa petition "are inapplicable in those instances where the INS, acting under the authority of the Attorney General, chooses to exercise its discretion in revoking a visa under § 1155 *after* a petition for that visa has already been granted."  Id. (emphasis in original).

12

of the Attorney General.  Id.  After examining both Ninth Circuit and Board of Immigration Appeals cases, the court decided that the "good and sufficient cause" language of § 1155 furnishes a "meaningful legal standard" and that the Attorney General's right or power to revoke approval was not *entirely* within his "judgment or conscience."  Id. (citing Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, 736 F.2d 1305 (9th Cir. 1984); Matter of Tawfik, 20 I. & N. Dec. 166 (BIA 1990)).

It also held that the decision to revoke the appellant's visa was not only governed by § 1155, but also, because the petitioner's initial L-1A petition and subsequent I-140 petition sought to classify him as a manager, by the definition of "managerial capacity" that is codified at 8 U.S.C. § 1101(a)(44). It determined that this statutory definition further served to restrict the Attorney General's discretion because the determination of what constitutes a manager is not a discretionary decision, but rather one governed by an objective legal standard.  Id. at 895-96.  Accordingly, because of the "good and sufficient cause language" and the definition of manager at § 1101(a)(44), the court held that § 1252(a)(2)(B)(ii) did not strip courts of jurisdiction to review decisions made by the Attorney General pursuant to § 1155.

In a vigorous and, in our view, persuasive dissent, Judge Tallman rejected much of the ANA International majority's interpretation of § 1155 and the provision's interaction with § 1252(a)(2)(B)(ii).  He wrote that "[a] common sense reading of the language of § 1155, in conjunction with § 1252(a)(2)(B)(ii), leads ineluctably to the conclusion that the Attorney General's visa revocation decisions are discretionary."  Id. at 896

13

(Tallman, J., dissenting). Section 1155 did not limit revocations to good and sufficient cause, he reasoned, but rather to circumstances in which the Attorney General *deems* there to be good and sufficient cause. Id. at 897 (Tallman, J., dissenting). "If the statutory language 'may, at any time, for what he deems to be' indicates a 'purely legal and hence non-discretionary' decision such that review of the decision is permitted . . . it is difficult to contemplate what would be an unreviewable discretionary act." Id. at 897-898 (Tallman, J., dissenting).

## C.

Although this is a question of first impression for this Court, we have nevertheless established general standards to determine when a decision is unreviewable under § 1252(a)(2)(B)(ii). In Urena-Tavarez v. Ashcroft, 367 F.3d 154 (3d Cir. 2004), we considered whether § 1252(a)(2)(B)(ii) precluded courts from reviewing the Attorney General's denial of a waiver under 8 U.S.C. § 1186a(c)(4).[8] Upon considering the language of § 1186a(c)(4), we held that it "explicitly assigns to the Attorney General the discretion to 'remove the conditional

_____

[8] Section 1186a(c)(4) provides that "[t]he Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status for an alien . . . if the alien demonstrates" one of three qualifications for waivers that follow in the ensuing paragraphs. 8 U.S.C. § 1186a(c)(4). Moreover, it states that "[t]he determination of what evidence [relevant to its application] is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General." Id.

14

basis of the permanent resident status for an alien' who demonstrates one of the three qualifications for waivers." Id. at 159. Significantly, unlike § 1155, which is devoid of any legal requirements, § 1186a(c)(4) contains several. Nevertheless, in concluding that this statute still vests unreviewable discretion in the Attorney General, we found it significant that the provision "states that the Attorney General *may* grant such a waiver, not that the Attorney General *shall* grant such a waiver, making clear that the waiver may not be granted even if the legal requirements of the three waiver qualifications are met." Id. at 160 (emphasis in original). Moreover, we noted that "[n]ot only may the Attorney General make the decision [to grant a waiver] in her or his discretion, but the Attorney General has the 'sole discretion' to decide 'what evidence is credible and the weight to be given that evidence.'" Id. (quoting § 1186a(c)(4)). Consequently, we concluded that § 1252(a)(2)(B)(ii) divested us of jurisdiction to consider the denial of waivers under § 1186a(c)(4). Less than four months later, we decided Soltane.

D.

Appellants' essential contention before us is that within § 1155 the phrase "good and sufficient cause" is a nondiscretionary, reviewable "statutory standard which must be met before the Attorney General is free to exercise his discretion in revoking a petition." (Jilin USA Br. at 19.) Although they concede that § 1252(a)(2)(B)(ii) precludes review of discretionary decisions, they argue that rather than giving the Attorney General limitless discretion to revoke approvals, "the language of § 1155 is intended to give the Attorney General [only] a small degree of latitude in determining the revocability

15

of a petition." (Id. at 19.) In this case, they contend that the revocation was grounded on the "*clear* and *specific* requirements [of § 1101(a)(44)(A) & (B)] that must be met in order to qualify as an executive or managerial employee," and we may therefore review that underlying "statutory determination." (Id. at 20-21.) Absent a grant of complete discretion pursuant to § 1155, they argue, the jurisdictional bar of § 1252(a)(2)(B)(ii) does not apply.

Appellants' argument ignores the plain language of § 1155. Drawing from the lessons of Urena-Tavarez and Soltane, and examining § 1155 in its entirety, we note several clear indications that the revocation of an approval of a petition is committed solely to administrative discretion.

First, § 1155 states that the Secretary of Homeland Security (and, previously, the Attorney General) *may* revoke approval of a petition. Urena-Tavarez teaches that such language is indicative of administrative discretion for purposes of § 1252(a)(2)(B)(ii). See 367 F.3d at 160 (observing that the word "may" vests discretion in the Attorney General); see also Zhu v. Gonzales, 411 F.3d 292, 295 (D.C. Cir. 2005) (citations and quotations omitted) ("[T]he usual presumption is that 'may' confers discretion."); cf. Soltane, 381 F.3d at 147 (stressing that the word "shall" in § 1153(b)(4) makes the Attorney General's resulting determinations nondiscretionary).

Second, § 1155 states that approval may be revoked "at any time." This too connotes a level of discretion. El-Khader, 366 F.3d at 567; ANA Int'l, 393 F.3d at 893; Firstland Int'l, 377 F.3d at 132. Indeed, as the Court of Appeals for the Second

16

Circuit observed in <u>Firstland International</u>, the discretion to revoke "at any time" had once been restricted by the now-defunct notice requirement. 377 F.3d at 132; § 5304(c), 118 Stat. at 3736. Congress's elimination of this requirement strongly indicates an intent to strengthen the discretion of the Secretary of Homeland Security to revoke approval of petitions.

Third, § 1155 permits revocation when the Secretary "deems" there to be good and sufficient cause. This language indicates that Congress committed to the Secretary's discretion the decision of when good and sufficient cause exists to revoke approval. <u>Cf.</u> <u>Zhu</u>, 411 F.3d at 295 (emphasis added) (holding that § 1153(b)(2)(B)(I), which allows the Attorney General to waive a visa issuance requirement "when the Attorney General *deems it to be in the national interest*," comes within the "reach" of § 1252(a)(2)(B)(ii) because it grants the Attorney General the discretion to make that determination); <u>but see</u> <u>ANA Int'l</u>, 393 F.3d at 894-895 (emphasizing the determination of what constitutes "good and sufficient cause" at the expense of explicit statutory language (i.e., "deems") that grants the Secretary discretion *to judge for himself* what constitutes such cause).

Tracking the Ninth Circuit's logic in <u>ANA International</u>, Appellants argue that to determine "good and sufficient cause," the Attorney General must consider the definitions of manager and executive as codified at § 1101(a)(44)(A) & (B). <u>See</u> <u>ANA Int'l</u>, 393 F.3d at 895 (stating that when the Attorney General relies upon discrete legal factors in making a decision, the "meaning of that particular legal classification nevertheless remains a reviewable point of law"). They argue that these statutory definitions constitute reviewable nondiscretionary

17

factors beyond the reach of the jurisdictional bar of § 1252(a)(2)(B)(ii).

We disagree. The phrase "*for what [the Secretary] deems to be* good and sufficient cause," cannot be modified by judicial fiat to read the naked words, "for good and sufficient cause." To remove from one premise in the argument the statutory passage "for what [the Secretary] deems to be" is to commit what logicians describe as the fallacy of vicious abstraction.[9] The operative fact required to exercise discretion

---

[9] William S. Sahakian & Mabel Lewis Sahakian, Ideas of the Great Philosophers 15-16 (1966). The Sahakians describe this fallacy as the removal of a statement from its context, which thus changes the meaning of an argument. Id. at 15. They illustrate this fallacy with four examples, each followed by the correct, complete statement:

> St. Paul said, "Money is the root of all evil." ("The *love* of money is the root of all evil.") Ralph Waldo Emerson said: "Consistency is the hobgoblin of little minds." ("*Foolish* consistency is the hobgoblin of little minds.") Alexander Pope said, "Learning is a dangerous thing." ("A *little* learning is a dangerous thing; drink deep, or taste not the Pierian spring. There shallow draughts intoxicate the brain, and drinking largely sobers us again.") Francis Bacon said, "Philosophy inclineth man's mind to atheism." ("A *little* philosophy inclineth man's mind to atheism, but depth in philosophy bringeth men's

18

under § 1155 is not merely the presence of cause for the revocation, but the Secretary's *judgment* that such cause exists. Indeed, to quote Judge Tallman, "[n]ot only does [the Secretary] decide whether . . . cause exists, he decides what constitutes such cause in the first place." ANA Int'l, 393 F.3d at 899 (Tallman, J., dissenting). Accordingly, although Congress may have defined the roles of a "manager" and "executive" in order to inform the Secretary's decision, the actual application of those definitions is solely vested in the Secretary's discretion.[10]

--------

minds about to religion.")

Id. at 15-16.

[10] One court has recently critiqued the Ninth Circuit's approach in ANA International by observing:

> [A]ccording to the Ninth Circuit's rule, if Congress then spells out that classification and clarifies it by defining a term within it, Congress has thereby nullified the jurisdictional immunity. Therefore, if Congress wishes that a decision of the Attorney General regarding an alien classification be outside the jurisdiction of the courts, Congress cannot define the classification. This is an absurd result.

Global Export/Import Link, Inc. v. U.S. Bureau of Citizenship and Immigration, --- F. Supp. 2d ---, 2006 WL 752612, at *5 (E.D.Mich. March 21, 2006).

19

Fourth, "for what [the Secretary] deems to be good and sufficient cause" is arguably so subjective as to provide no meaningful legal standard. El-Khader, 366 F.3d at 567 (observing that a determination made by the Attorney General pursuant to this language is "highly subjective"); Systronics Corp. v. INS, 153 F. Supp. 2d 7, 12 (D.D.C. 2001) (concluding that the "determination of 'good and sufficient cause' is committed to the discretion of the Attorney General because it lacks precise factual standards for this Court to review"); see also Zhu, 411 F.3d at 295 (assuming only for the sake of argument that what is in the "national interest" is a manageable legal standard). Moreover, this provision, taken literally, would require courts to test whether the Secretary genuinely deemed the proffered cause to be "good and sufficient." It is absurd to think that Congress intended the courts to conduct such an invasive inquiry into the Secretary's subjective thought process at the time of revocation. Where there is no meaningful standard of review for an administrative decision within a statute's text, the decision is not subject to judicial review. Cf. Heckler v. Chaney, 470 U.S. 821, 830 (1985) (noting that courts have no jurisdiction under the Administrative Procedure Act to review matters where "a court would have no meaningful standard of review against which to judge the agency's exercise of discretion"). Here, the requirement of "for what [the Secretary] deems good and sufficient cause" in § 1155 is so vague as to be useless as a guide to a reviewing court.

Accordingly, we have no difficulty concluding that the decision to revoke an approved visa petition pursuant to 8 U.S.C. § 1155 is left to the discretion of the Secretary of Homeland Security. And so, pursuant to § 1252(a)(2)(B)(ii), the

20

District Court correctly held that it lacked jurisdiction to review this administrative decision.[11]

IV.

Finally, Appellants argue that the District Court

---

[11] Appellants argue that by affirming the District Court, we are thereby allowing the Secretary to "approve a petition it did not like on *Monday*, then revoke it on *Tuesday* and be fully insulated from judicial review, whereas, had [he] denied it on Monday, that denial would have been reviewable." (Jilin USA Br. at 24; Reply Br. at 3.) While this may be an inequitable result of our present decision, it is the system Congress has created and "we cannot legislate to correct it." NVE Inc. v. Dep't of Health and Human Servs., 436 F.3d 182, 194 (3d Cir. 2006) (observing that our hands are tied to correct a curious result of Congress' statutory scheme). As the Supreme Court has noted, § 1252(a)(2)(B) is one of "many provisions of IIRIRA [that] are aimed at protecting the Executive's discretion from the courts – indeed, that can fairly be said to be the theme of the legislation." Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 486 (1999). Moreover, Congress recently *expanded* administrative discretion by removing the notice requirement under § 1155 and by establishing that § 1252(a)(2)(B)(ii) applies beyond removal proceedings. In short, there is ample reason to believe that Congress could have intended to bolster the discretion of the Secretary of Homeland Security to revoke approval of petitions, even if it did so in a strange or roundabout way.

committed a clear error of law by dismissing their constitutional challenges for lack of jurisdiction.[12] In their District Court complaint, they alleged that the government's revocation of their previously-approved visa petition violated their Fifth Amendment due process rights by: (1) denying them a legal right they had relied upon for over two years; (2) discriminating against small companies in favor of large companies; and (3) attempting to enforce perceived United States trade policy through the immigration laws. They asserted that jurisdiction existed to hear these claims under 28 U.S.C. § 1331,[13] 28 U.S.C. § 2201[14] and 5 U.S.C. § 702.[15]

---

[12] The District Court held that Appellants' other arguments, which would include their constitutional claims, are "without merit because the statutory framework in question states that federal courts cannot assert jurisdiction outside of the framework" and that "without jurisdiction under the statutes, this Court is precluded from asserting jurisdiction at all." (Order Denying Motion for Reargument, app. at A5 n.8 (finding significant the opening statement of 8 U.S.C. § 1252(a)(2)(B)(ii), "[n]otwithstanding any other provision of law, no court shall have jurisdiction . . .") . )

[13] 28 U.S.C. § 1331 provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[14] 28 U.S.C. § 2201 provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could

22

Because evaluating these constitutional claims requires us to revisit and review the Attorney General's exercise of discretion made pursuant to 8 U.S.C. § 1155, we lack the jurisdiction to consider them. The jurisdiction granted by 28 U.S.C. §§ 1331 & 2201 and 5 U.S.C. § 702 to review constitutional questions is immediately precluded by the opening words of 8 U.S.C. § 1252(a)(2)(B), which states that "[n]*otwithstanding any other provision of law*, . . . no court shall have jurisdiction to review . . . decision[s] . . . specified in this subchapter to be in the discretion of the . . . Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B) (emphasis added). The District Court therefore correctly dismissed Appellants' constitutional claims for lack of jurisdiction.[16] Cf. Van Dinh v. Reno, 197 F.3d 427, 435 (10th

---

be sought."

[15] 5 U.S.C. § 702 provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

[16] Effective as of May 11, 2005, the REAL ID Act of 2005 added the language "(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D)" after "Notwithstanding any other provision of law." § 106(a)(1)(A)(ii), 119 Stat. at 310 (codified as amended at 8 U.S.C. § 1252(a)(2)(B)). Accordingly, even after the enactment of the REAL ID Act, federal courts are without jurisdiction to review constitutional

23

Cir. 1999) (holding that § 1252(a)(2)(B) precludes "direct review of the Attorney General's discretionary decisions in immigration cases by means of a <u>Bivens</u> class action suit").

V.

Because the District Court properly determined that the Attorney General's decision under 8 U.S.C. § 1155 to revoke the prior approval of a visa petition is an act of administrative discretion that is shielded from court review pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), and because we have no jurisdiction to review Appellants' constitutional claims questioning that exercise of

_____

claims raised pursuant to 28 U.S.C. §§ 1331 & 2201 and 5 U.S.C. § 702 that question the revocation of a visa petition in an action for mandatory and declaratory relief. Had these claims been brought in a petition for review of a final order of removal, then the jurisdiction stripped by § 1252(a)(2)(B) to review these constitutional claims would have been restored by recently enacted § 1252(a)(2)(D). <u>See</u> § 106(b), 119 Stat. at 311 (stating that § 1252(a)(2)(D), which was enacted on May 11, 2005, only applies retroactively "to cases in which [a] final order of removal . . . was issued."); <u>Hernandez v. Gonzales</u>, 437 F.3d 341, 344 (3d Cir. 2006) (stating that petitions for review are now the "sole and exclusive means of judicial review for all orders of removal except those issued pursuant to 8 U.S.C. § 1225(b)(1)" and that § 1252(a)(2)(D) enlarged our jurisdiction to allow review of constitutional questions raised in those petitions for review). Because, however, this is not a petition for review and no final order of removal has been issued, § 1252(a)(2)(D) does not apply.

24

discretion, the District Court acted well within the bounds of its permissible discretion in denying Appellants' motion for reargument.

We will affirm the judgment of the District Court.