# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

—————

Argued May 6, 2021                    Decided July 20, 2021

No. 20-5235

ITECH U.S., INC,
APPELLANT

v.

TRACY RENAUD, ACTING DIRECTOR, UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES,
APPELLEE

—————

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-03352)

—————

*Geoffrey Forney* argued the cause for appellant. With him
on the briefs was *Bradley B. Banias.*

*Aaron S. Goldsmith*, Senior Litigation Counsel, U.S.
Department of Justice, argued the cause for appellee. With him
on the brief were *Brian M. Boynton*, Acting Assistant Attorney
General, and *Glenn M. Girdharry*, Assistant Director. *Kenneth
A. Adebonojo* and *R. Craig Lawrence*, Assistant U.S. Attorneys
entered appearances.

Before: SRINIVASAN, *Chief Judge*, WILKINS and KATSAS,
*Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: iTech US, Inc. ("iTech") filed an I-140 immigrant visa petition on behalf of Vishnu Vardhana Reddy Katta Sai Sampoorna ("Reddy"). Approval of an I-140 petition is one step on an immigrant worker's long path to acquire permanent resident status. United States Citizenship and Immigration Services ("USCIS") approved the petition, but revoked its approval three years later. When iTech petitioned the District Court for review of that decision, the District Court found that Congress placed visa revocation decisions within the unreviewable discretion of the executive and dismissed iTech's suit for lack of jurisdiction. We agree. Joining nine of our sister Circuits, we affirm.

**I.**

This appeal concerns two interlocking provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* Some background is necessary to understand how Mr. Reddy acquired and lost his non-immigrant status.

**A.**

"The INA allows for a certain number of immigrants to receive permanent residency through employer sponsorship." *Mantena v. Johnson*, 809 F.3d 721, 724 (2d Cir. 2015); *see* 8 U.S.C. § 1153(b)(2)(A) (establishing the percentage of visas available to "qualified immigrants who are members of the professions holding advanced degrees or their equivalent . . . and whose services in the sciences, arts, professions, or business are sought by an employer in the United States"). Immigrant workers and their potential employers must follow a three-step process. First, the Department of Labor ("DOL") must certify that the "labor market can absorb the immigrant without affecting other workers' wages." *Mantena*, 809 F.3d

at 724; *see also* 8 U.S.C. § 1182(a)(5)(A)(i). Once DOL certifies the position, USCIS must approve the employer's I-140 immigrant visa petition. *Mantena*, 809 F.3d at 724–25; *see also* 8 U.S.C. § 1154(b) (directing that "the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien . . . is eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition and forward one copy thereof to the Department of State");[1] 8 C.F.R. § 204.5(a)–(c) (establishing Form I-140 as the proper vehicle to petition the agency for classification under section 1153(b)(2)). Once granted, an immigrant visa petition under Form I-140 is valid indefinitely, 8 C.F.R. § 204.5(n)(3), though it may be revoked "at any time," 8 U.S.C. § 1155.

Once USCIS grants the I-140 petition, an immigrant worker is eligible to stand in line for an immigrant visa number to be issued by the Department of State. *United States v. Ryan-Webster*, 353 F.3d 353, 356 (4th Cir. 2003). "Because there are limits on the number of such visas in each category and from each country, immigrants must often wait many years for a permanent residency visa, especially if they are from a country, like India, that sends a large number of immigrants to the United States." *Mantena*, 809 F.3d at 725. Finally, with visa number in hand, the immigrant worker may file a Form I-485, his application to have his non-immigrant status adjusted to become a permanent resident entitled to live and work in the United States. *See* 8 U.S.C. § 1255(a); 8 C.F.R. § 204.5(n)(1).

At any point in this process, a USCIS officer may revoke the approval of an I-140 immigrant visa petition "when the

---

[1] Congress delegated to the Secretary of Homeland Security, through USCIS, the authority to adjudicate immigrant visa petitions in 2002. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 451(b)(1) (Nov. 25, 2002) (6 U.S.C. § 271(b)(1)).

necessity for the revocation comes to [its] attention." 8 C.F.R. § 205.2(a). This statutory authority stems from section 1155, which provides that the Secretary of Homeland Security ("Secretary") "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title," including immigrant visa petitions based on Form I-140. 8 U.S.C. § 1155.[2] If the officer ultimately decides to revoke a Form I-140 petition, the petitioner may file an administrative appeal. *See* 8 C.F.R. § 205.2(d); *id.* § 103.3. No party disputes those procedures were followed here.

## B.

iTech filed an I-140 immigrant visa petition on behalf of Mr. Reddy in July 2015. J.A. 1. USCIS approved the petition two months later. J.A. 14. In its application, iTech produced evidence of its ability to pay the proffered wage and evidence that Mr. Reddy had obtained a bachelor's degree, "in the form of a degree certificate from the University of Madras along with transcripts from 1999 through 2002." Appellant's Br. at 3; J.A. 6–13, 16. A year and a half later, USCIS issued a notice of intent to revoke the approved petition. J.A. 14. The agency grounded its revocation in the "realization that [the] immigrant visa petition was approved in error" and identified "inconsistencies in the record calling into question whether the beneficiary meets the educational requirements of the labor certification" and whether iTech "continues to demonstrate the ability to pay the proffered wage." J.A. 14, 16–17.

iTech provided additional documentation in response to the notice to revoke, J.A. 20–22, but USCIS ultimately decided

[2] The Secretary has delegated his revocation authority to any USCIS officer authorized to approve employment-based immigrant visa petitions. 8 C.F.R. §§ 2.1, 205.2(a).

to revoke its approval of the I-140 petition on the basis that iTech misrepresented Mr. Reddy's degree-conferring institution and employment qualifications, J.A. 39, 43–45, and did not establish its ability to pay the proffered wage, J.A. 48–51. On August 22, 2018, iTech filed a timely motion to reopen, J.A. 54–62, which USCIS denied a year later, J.A. 94.

This appeal comes to us from the District Court's July 24, 2020 grant of the agency's motion to dismiss for lack of jurisdiction. *iTech US, Inc. v. Cuccinelli*, 474 F. Supp. 3d 291, 292 (D.D.C. 2020). iTech brought suit under the Administrative Procedure Act, alleging that USCIS's decision to revoke its I-140 petition was arbitrary and capricious because the agency failed "to engage in rational decision-making based on the evidence in the record relating to the Company's ability to pay and [Mr. Reddy's] educational credentials." Appellant's Br. at 8. The District Court granted the agency's motion to dismiss, finding that the plain text of the INA preserves "the Secretary's ability to revoke a I-140 petition 'at any time' and for any reason he 'deems to be good and sufficient cause' [and] renders USCIS's revocation decision 'discretionary' under § 1155." *iTech*, 474 F. Supp. 3d at 293. A second section, section 1252(a)(2)(B)(ii), "in turn[] deprives the Court of jurisdiction to review the decision." *Id.* These provisions are discussed in detail below.

## II.

We review the District Court's determination that section 1252(a)(2)(B)(ii) shields the decision to revoke an I-140 petition from judicial review *de novo*. *Zhu v. Gonzales*, 411 F.3d 292, 294 (D.C. Cir. 2005). We start from "the presumption favoring judicial review of administrative action." *Make the Road New York v. Wolf*, 962 F.3d 612, 623 (D.C. Cir. 2020) (quoting *Guerrero-Lasprilla v. Barr*, — U.S. —, 140 S.

Ct. 1062, 1069 (2020)). "That 'well-settled' and 'strong presumption' in favor of judicial review is so embedded in the law that it applies even when determining the scope of statutory provisions specifically designed to limit judicial review," *id.* at 624 (citing *Guerrero-Lasprilla*, 140 S. Ct. at 1068), and when considering immigration statutes, including section 1252(a), *id.* The "presumption can be overcome only by 'clear and convincing evidence' of congressional intent to preclude judicial review." *Id.*

**A.**

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C (Sept. 30, 1996), "Congress amended the INA aggressively to expedite removal of aliens lacking a legal basis to remain in the United States." *Kucana v. Holder*, 558 U.S. 233, 249 (2010). "Among IIRIRA's several proscriptions of judicial review is the one here at issue, § 1252(a)(2)(B)(ii), barring review of administrative decisions Congress placed within the Attorney General's discretion." *Id.* Section 1252(a)(2)(B) is titled "Denials of discretionary relief" and provides that "no court shall have jurisdiction to review—

> (i)      any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii)      any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B). "'[T]his subchapter' refers to Title 8, Chapter 12, Subchapter II, of the United States Code, codified at 8 U.S.C. §§ 1151–1381 and titled 'Immigration.'" *Kucana*, 558 U.S. at 239 n.3. The question is two-fold. First we ask whether an I-140 visa revocation made under section 1155 could fall under clause (ii)'s umbrella. If so, we ask whether section 1155 specifies that visa revocations are in the Secretary's discretion. If the answer to both questions is "yes," these statutory provisions insulate the Secretary's decision to revoke an immigrant visa petition from judicial review.

We focus first on clause (ii), which shields "any other decision or action" of the Secretary from judicial review. iTech contends that section 1252(a)(2)(B)(ii) is limited, "as its heading indicates, to 'Denials of discretionary relief,'" which the decision to revoke an I-140 petition is not. Appellant's Br. at 25 (quoting 8 U.S.C. § 1252(a)(2)(B)). iTech argues that the decision to revoke an approved I-140 petition is not a denial of relief because it "pertains only to the issue of whether a foreign national has met a preliminary step for obtaining an immigrant visa." Appellant's Br. at 25, 31. The agency does not dispute, and we assume for the sake of argument, that revocation of an I-140 petition is not "relief." The agency instead argues that the phrase "any other decision or action" in section 1252(a)(2)(B)(ii) refers "to all decisions or actions 'the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security,'" regardless of whether they deny relief. Appellee's Br. at 18–19 (citing J.A. 101–02). We read the statute as the agency does.

"When called on to resolve a dispute over a statute's meaning," we "afford the law's terms their ordinary meaning at the time Congress adopted them." *Niz-Chavez v. Garland*, — U.S. —, 141 S. Ct. 1474, 1480 (2021). We exhaust "all the

textual and structural clues" at our disposal to uncover Congress's intended meaning. *Id.* (quoting *Wis. Cent. Ltd. v. United States*, — U.S. —, 138 S. Ct. 2067, 2074 (2018)). Read in isolation, "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary" could be fairly interpreted to encompass only those decisions or actions not listed in clause (i) that concern a decision whether to grant or deny discretionary relief. But we do not read snippets of statutory text in a vacuum. *Torres v. Lynch*, 578 U.S. —, 136 S. Ct. 1619, 1626 (2016) ("[W]e must, as usual, 'interpret the relevant words not in a vacuum, but with reference to the statutory context.'" (quoting *Abramski v. United States*, 573 U.S. 169, 179 (2014))). "And beyond context and structure," we often look to "'history [and] purpose' to divine the meaning of language." *Gundy v. United States*, 588 U.S. —, 139 S. Ct. 2116, 2126 (2019) (alteration in original) (quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013)).

Taking each in turn, we begin with the text. We ask whether "any other decision or action" includes decisions left to the Secretary's discretion that go beyond denying discretionary relief. "[U]se of the word 'any' will sometimes indicate that Congress intended particular statutory text to sweep broadly." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. —, 138 S. Ct. 617, 629 (2018) (citing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 220 (2008)). "But whether it does so necessarily depends on the statutory context." *Id.*; *see also Ali*, 552 U.S. at 243–44 (Breyer, J., dissenting) (collecting cases). The reader sees the problem, but perhaps "other" will be of more help. "Other" means "distinct from that or those first mentioned or implied," or, more simply, "not the same." WEBSTER'S NEW COLLEGIATE DICTIONARY 823 (10th ed. 1996); *see also* X THE OXFORD ENGLISH DICTIONARY 981 (2d ed. 1989) ("Existing besides, or distinct from, that already mentioned or implied; not this, not the same, different in

identity; further, additional.").  But those definitions tell us little because they do not indicate *how* the "other decision[s]" referred to in clause (ii) are "distinct from" the "judgment[s] regarding the granting of relief" referred to in clause (i).  Are the decisions referred to in clause (ii) distinct from those referred to in clause (i) because clause (ii) sweeps broadly to include any decision Subchapter II "specifie[s]" to fall within the Secretary's discretion, whether or not it involves a denial of discretionary relief?  Or are they distinct simply because they are not made under section 1182(h), 1182(i), 1229b, 1229c, or 1255, but nonetheless concern relief from removal?  "[S]taring at, or even looking up," *Torres*, 136 S. Ct. at 1626, the words "any other" cannot answer whether section 1252(a)(2)(B) is limited to denials of discretionary relief.

We look next to the surrounding text.  Section 1252(a)(2)(B)'s introduction instructs that, "[n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review" the decisions specified in clauses (i) and (ii).  8 U.S.C. § 1252(a)(2)(B).  The modifier "regardless of whether the judgment, decision, or action is made in removal proceedings" conveys that section 1252(a)(2)(B) is not a narrowly cabined provision.  And Congress's choice to include the modifier "statutory or nonstatutory" and specific call-out to Code provisions beyond Title 8 imparts a broad reading of "*any other* provision of law."  "Where, as here, Congress uses similar statutory language and similar statutory structure in two adjoining provisions, it normally intends similar interpretations." *Nijhawan v. Holder*, 557 U.S. 29, 39 (2009); *see also Pereira v. Sessions*, 585 U.S. —, 138 S. Ct. 2105, 2115 (2018) ("[I]t is a normal rule of statutory construction that

identical words used in different parts of the same act are intended to have the same meaning." (quoting *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 571 (2012))).

iTech pushes an alternative structural reading. It invokes the canons of *noscitur a sociis* and *ejusdem generis* to argue that because a visa revocation made under section 1155 is "not of the same type [of decision] as those specifically mentioned in the statutory list of items withdrawn from judicial review, it does not fall within Section 1252(a)(2)(B)(ii)." Appellant's Br. at 28. Under those canons, "where general words follow an enumeration of specific items, the general words are read as applying only to other items akin to those specifically enumerated." *NASDAQ Stock Mkt., LLC v. SEC*, 961 F.3d 421, 428 (D.C. Cir. 2020) (quoting *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588 (1980)). In iTech's reading, clause (ii) serves as a safety net to pull in INA provisions which Congress did not explicitly name in clause (i), but which nonetheless allow the Attorney General or Secretary to grant or deny discretionary relief from removal. But "we do not woodenly apply limiting principles every time Congress includes a specific example along with a general phrase." *Ali*, 552 U.S. at 227; *see, e.g.*, *Potomac Elec. Power Co. v. Dir., Off. of Workers' Comp. Programs*, 449 U.S. 268, 274 (1980) ("Nor are we free to read the subsequent words 'all *other* cases' as though they described 'all of the foregoing' as well; the use of the word 'other' forecloses that reading.").[3]

---

[3] As in *Ali*, section 1252(a)(2)(B) is disjunctive: no court has jurisdiction to review "any judgment regarding the granting of relief under [enumerated sections] *or*," 8 U.S.C. 1252(a)(2)(B)(i) (emphasis added), "any other decision or action of the Attorney General or the Secretary . . . the authority for which is specified under this subchapter to be in [his] discretion," *id.* §1252(a)(2)(B)(ii). *Ali*, 552 U.S. at 225 ("The phrase is disjunctive, with one specific and

Here, clause (i) concerns "judgment[s] regarding the granting of relief" made under specific enumerated provisions, and clause (ii) considers "any other decision or action of the Attorney General." Notably, the relevant portion of clause (ii) does not repeat the language "regarding the granting of relief" included in clause (i). Clause (ii) refers to the granting of relief only when carving out a specific decision—"the granting of relief under section 1158(a)"—from the scope of the clause's broad catchall. 8 U.S.C. § 1252(a)(2)(B)(ii); *see also NetCoalition v. SEC*, 715 F.3d 342, 350 (D.C. Cir. 2013) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))). In other words, if Congress intended "any other decision or action" to be limited to those actions "regarding the granting of relief," it either would have said so in the relevant portion of clause (ii), or left out the limiting language in clause (i).[4]

Thus, iTech's preferred canons come up against another, *expressio unius est exclusio alterius*. That is, reading clause (ii) as the catch-all for the specific provisions in clause (i) creates inter-canon tension— reading clause (ii) as part of a continuing list would require us to read the modifier "regarding the granting of relief" across both subsections, despite the fact that Congress specifically included that phrase only in clause (i) and the *carveout* to clause (ii). We decline to do so,

---

one general category, not—like the clauses at issue in *Keffeler* and *Dolan*—a list of specific items separated by commas and followed by a general or collective term.").

[4] We can imagine the alternative version of clause (i), stripping jurisdiction to review "any judgment under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." *Cf.* 8 U.S.C. § 1252(a)(2)(B)(i).

especially where the Supreme Court has read "any other" so broadly as to nullify the usefulness of *ejusdem generis* because such "expansive language offers no indication whatever that Congress intended the limiting construction" that iTech urges. *Harrison*, 446 U.S. at 588–89.

iTech faults the District Court for concluding that the text of section 1252(a)(2)(B) is clear, and its resulting refusal to allow the section heading to limit the text's plain meaning. Appellant's Br. at 29–30. While section headings are instructive, section 1252(a)(2)(B)'s heading is of limited use where the text itself admits of limited ambiguity. *See* 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:14 (7th ed. 2007) ("[S]ection headings and notes may be another helpful resource to interpret an ambiguous statute, but headings and notes are not binding, may not be used to create an ambiguity, and do not control an act's meaning by injecting a legislative intent or purpose not otherwise expressed in the law's body."). Nor do we find *Kucana* controlling on the issue at hand simply because the Supreme Court found that "[t]he clause (i) enumeration," was "instructive in determining the meaning of the clause (ii) catchall." 558 U.S. at 247; *see* Appellant's Br. at 28–29. That observation supported the conclusion that "both clauses convey[ed] that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute," but not when the Attorney General deemed a decision discretionary through regulation. *Id.* Our ruling is not in tension with that observation because, as shown in part B below, Congress itself "set out the Attorney General's discretionary authority" in section 1155. *Id.*

Finally, looking to IIRIRA's purpose, we see little basis for claiming that Congress intended to confine this jurisdiction-stripping provision to a narrow spectrum of "relief" where

13

"*many* provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the theme of the legislation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999). Because the tools of statutory interpretation and the plain text auger a broad reading bolstered by Congress's intent in IIRIRA to expedite review, we find clear and convincing evidence that Congress intended to preclude judicial review of those decisions "specified under this subchapter to be in the discretion of the Attorney General or the Secretary," whether or not those decisions grant or deny an immigrant relief from removal.

**B.**

We are left to determine whether visa revocations under section 1155 are "specified . . . to be in the discretion of the Attorney General or the Secretary." 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1155 provides that

> [t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154[5] of this title.

*Id.* § 1155. No statutory gymnastics are necessary here. We analyzed an analogous INA provision in *Zhu v. Gonzales*, 411

---

[5] Section 1154 directs the Attorney General to approve immigrant visa petitions, including those based on Form I-140, "if he determines that the facts stated in the petition are true and that the alien . . . is eligible for [an employment-based] preference." 8 U.S.C. § 1154(b).

F.3d 292 (D.C. Cir. 2005), and our decision there controls our holding here.

In *Zhu*, four foreign citizens sought review of the Attorney General's refusal to waive the requirement that they obtain a labor certification before petitioning for an I-140 immigrant visa. *Id.* at 293. "[T]he Attorney General may" waive that requirement "when [he] deems it to be in the national interest." *Id.* at 293–94 (alteration in original) (quoting 8 U.S.C. § 1153(b)(2)(B)(i)). We held the Attorney General's decision to waive, or to decline to waive, that requirement "entirely discretionary," *id.* at 295 (internal quotation omitted), and unreviewable under section 1252(a)(2)(B)(ii), *id.* at 294. Like iTech, Zhu argued that decisions "specified . . . to be in the discretion of the Attorney General" applied only to decisions made expressly discretionary by the terms of the authorizing statute. *Id.* (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)).

Laboring against our precedent, iTech argues that section 1155 cannot specify discretion where Congress did not include the word "discretion" when it revised section 1155 in 1996 as part of IIRIRA, nor in 2004 when it amended section 1155 to transfer authority to revoke approved petitions from the Attorney General to the Secretary of Homeland Security. Appellant's Br. at 19–20. The *Zhu* Court expressly rejected this argument: we held that "a decision may be 'specified . . . to be in the discretion of the Attorney General' even if the grant of authority to make that decision does not use the word 'discretion.'" 411 F.3d at 294–95. So too here.

iTech next argues that section 1155 does not contain discretionary language because "good and sufficient cause" imparts a judicially manageable standard for evaluating the agency's decision which the words "may" and "deem" do not diminish. Appellant's Br. at 31, 38–41. iTech believes that

because the Attorney General interpreted section 1155 to require use of the same standards the agency uses for determining initial eligibility for immigrant visa petitions to *revoke* approved petitions, those regulations provide the meaning of "good and sufficient cause" and import a substantive legal standard for evaluating the agency's decision. Appellant's Br. at 32–33. We need not address this argument, since *Zhu* makes clear that the combination of "may" and "deems" is sufficient to render a statutory grant of authority like the one in section 1155 discretionary.

*Zhu* interpreted a provision providing that "the Attorney General may" waive the requirement for certain DOL certifications "when [he] deems it to be in the national interest." 411 F.3d at 294–95 (quoting 8 U.S.C. § 1153(b)(2)(B)(i)). In determining whether the Attorney General's refusal to waive that requirement fell within the ambit of clause (ii)'s jurisdiction-stripping provision, the *Zhu* Court assumed that "in the national interest" was a manageable legal standard, as we assume for the sake of argument "good and sufficient cause" is here. *Id.* at 295. But we found that "may" "suggests not that the Congress expected the Attorney General actually to deny a petition the grant of which he deems to be in the national interest, but rather that his decision . . . is, like 'Speech or Debate in either House [of the Congress, not to] be questioned in any other Place,' U.S. CONST., art. I, § 6, and certainly not in a court." *Id.* (alterations in original).

iTech attempts to distinguish *Zhu* by noting that the panel there suggested that national interest waivers are discretionary because they are "unfettered by statutory standards," whereas "good and sufficient cause" imparts a judicially manageable standard. Appellant's Br. at 41. But iTech ignores the fact that the *Zhu* Court held that *even if* "in the national interest" were a manageable standard, it would still find that the provision's

surrounding text—"the Attorney General *may*, when the Attorney General deems it to be in the national interest," 8 U.S.C. § 1153(b)(2)(B)(i) (emphasis added)—imparted discretion. *Zhu*, 411 F.3d at 295. Because the text of section 1155 is functionally indistinguishable—"[t]he Secretary of Homeland Security *may*, at any time, for what he deems to be good and sufficient cause," 8 U.S.C. § 1155 (emphasis added)—we hold that the Secretary's decision to revoke an approved I-140 petition is similarly "specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security," *id.* § 1252(a)(2)(B)(ii). Stitching together section 1155 and section 1252(a)(2)(B) at last, we conclude that clear and convincing evidence establishes Congress's intent to insulate visa revocation decisions like the one revoking approval of Mr. Reddy's I-140 petition from judicial review.

## C.

Our holding is consistent with the conclusions of various other circuits. Nine of our sister circuits hold that courts lack jurisdiction to consider visa revocations made under section 1155, and one has said as much in *dicta*. *See Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 484 (1st Cir. 2016); *Firstland Int'l, Inc. v. INS*, 377 F.3d 127, 131 (2d Cir. 2004) (*dicta*); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 202–05 (3d Cir. 2006); *Polfliet v. Cuccinelli*, 955 F.3d 377, 381–83 (4th Cir. 2020); *Ghanem v. Upchurch*, 481 F.3d 222, 224–25 (5th Cir. 2007); *Mehanna v. USCIS*, 677 F.3d 312, 314–15 (6th Cir. 2012); *El-Khader v. Monica*, 366 F.3d 562, 568 (7th Cir. 2004); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009); *Green v. Napolitano*, 627 F.3d 1341, 1344–45 (10th Cir. 2010); *Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 419–20 (11th Cir. 2009) (unpublished). *But see ANA Int'l, Inc. v. Way*, 393 F.3d 886, 893–95 (9th Cir. 2004).

Granted, in some instances the parties conceded or the panel assumed that section 1252(a)(2)(B)(ii) encompassed *any* decision or action "the authority for which is specified under this subchapter to be in the [Secretary's] discretion," regardless of whether the decision denied relief. *See Bernardo*, 814 F.3d at 484; *Jilin*, 447 F.3d at 202–03; *Ghanem*, 481 F.3d at 223; *Mehanna*, 677 F.3d at 314; *Sands*, 308 F. App'x at 419–20. But in other instances, the court reached the issue and decided it as we do today. *See El-Khader*, 366 F.3d at 566 ("[T]he plain language of section 1252(a)(2)(B)(ii) bars courts from reviewing any discretionary decisions of the Attorney General made under the authority of sections 1151 through 1378 of Title 8 of the United States Code." (emphasis omitted) (citing *Samirah v. O'Connell*, 335 F.3d 545, 548–49 (7th Cir. 2003))); *Polfliet*, 955 F.3d at 381 ("On its face, § 1252(a)(2)(B)(ii) bars judicial review of decisions 'specified' to be in the 'discretion' of the Secretary."); *Abdelwahab*, 578 F.3d at 820 n.4 ("By its plain language, § 1252(a)(2)(B)(ii) applies to discretionary action not taken in a removal proceeding."); *Green*, 627 F.3d at 1345 ("[S]ince a visa revocation decision is a discretionary act, our jurisdiction to review it is precluded by the plain meaning of § 1252(a)(2)(B)[ii]." (alteration in original) (footnote omitted) (quoting *Hamilton v. Gonzales*, 485 F.3d 564, 568 (10th Cir. 2007))).

## III.

For the reasons above, we conclude that section 1252(a)(2)(B)(ii) precludes judicial review of all decisions the authority for which is specified under Title 8, Chapter 12, Subchapter II to be within the Secretary's discretion. And we hold that the decision to revoke an I-140 immigrant visa petition under section 1155 is a "decision or action . . . the authority for which is specified under" Title 8, Chapter 12,

Subchapter II to be within the Secretary's discretion. Accordingly, we affirm the judgment of the District Court.

*So ordered.*