**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 1, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DONALD HAMILTON, and JAMES
HAMILTON,

Petitioners,

v.

ALBERTO GONZALES,

Respondent.

No. 05-9560

**PETITION FOR REVIEW OF AN ORDER FROM THE**
**BOARD OF IMMIGRATION APPEALS**
**(AGENCY NO. A78 899 834)**

Laura L. Lichter, Lichter & Associates, P.C., Denver, Colorado, for Petitioners-
Appellants.

Thomas B. Fatouros, Attorney (Peter D. Keisler, Assistant Attorney General, and
Mary Jane Candaux, Senior Litigation Counsel, with him on the brief), Office of
Immigration Litigation, United States Department of Justice, Civil Division,
Washington, D.C., for Respondent-Appellee.

Before **O'BRIEN**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

This appeal raises the question of our jurisdiction to review a decision by the Bureau of Immigration Appeals (BIA) affirming the revocation of an immigrant visa. Because we lack jurisdiction to review a visa revocation decision, we GRANT the government's motion to dismiss and DISMISS this appeal.

## I. Background

Petitioner Donald Hamilton, a United States citizen, sought a visa on behalf of his adopted son, James, a native of South Korea. A regional director of the former Immigration and Naturalization Service (INS) granted Mr. Hamilton's petition on August 17, 2001. After the Attorney General filed objections, the director revoked James's visa three months later based on a finding that James was adopted after the age of sixteen, the statutory cut-off for a valid adoption for immigration purposes under the Immigration and Nationality Act (INA).

While Mr. Hamilton admits James was adopted after the statutory age cut-off, he contends the state court adoption decree—which was issued *nunc pro tunc* to a date prior to James's sixteenth birthday—satisfies the requirements of the INA.[1] In revoking James's visa, the director concluded a *nunc pro tunc* decree is

_____

[1] Following approval of the visa petition, the Hamiltons applied to adjust James's status to that of a permanent resident. The issue of James's *effective* adoption date arose during the government's review of this application. A Wyoming state court had previously finalized the adoption in an order dated January 16, 2001, when James was seventeen. Even though adoption proceedings were commenced after James's sixteenth birthday, the Wyoming court issued the

(continued...)

not acceptable for establishing the age of adoption for immigration purposes. The BIA affirmed on appeal, and Hamilton now seeks direct review from this Court.

## II. Discussion

Before we can reach the merits of Hamilton's claim, we must resolve whether we have jurisdiction to do so. "We have jurisdiction to determine our jurisdiction." *Schroeck v. Gonzales*, 429 F.3d 947, 950 (10th Cir. 2005). Hamilton claims we may assert jurisdiction over his claim under either the INA or the Administrative Procedures Act (APA).

While recognizing that the INA traditionally limited circuit court jurisdiction to final orders of removal, 8 U.S.C. § 1252(a)(1), Hamilton argues a new provision of the INA enacted pursuant to the REAL ID Act of 2005 expands our jurisdiction to hear "constitutional claims and questions of law" that arise in otherwise non-reviewable immigration actions. 8 U.S.C. § 1252(a)(2)(D). Alternatively, Hamilton contends the APA provides a separate jurisdictional grant over his claims.

After describing the general basis for our jurisdiction under the INA, we address Hamilton's arguments in turn.

---

[1](...continued)
adoption decree *nunc pro tunc* to September 1, 1999, a date before James's sixteenth birthday. Mr. Hamilton argues the adoption was legally effective before James's sixteenth birthday and thus in conformity with the INA.

**A. Appellate Jurisdiction under the INA**

Under the INA, the general grant of circuit court jurisdiction is found in 8 U.S.C. § 1252(a)(1), which establishes "[j]udicial review of a final order of removal." The INA further defines an "order of removal" as "the order of the special inquiry officer [an immigration judge]. . . . concluding that the alien is deportable or ordering deportation." 8 U.S.C. § 1101(a)(47)(A).[2] An order of removal becomes *final* when the BIA either (1) affirms an immigration judge's removal decision, or (2) when the time for appealing that decision has expired. 8 U.S.C. § 1101(a)(47)(B). None of these requirements has been satisfied in this case.[3]

We construe § 1252(a)(1) narrowly, and have consistently found we lack jurisdiction to review immigration decisions that fall short of a final removal order. *See*, *e.g.*, *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006) ("We have general jurisdiction to review only a final order of removal and there

---

[2] The terms removable and deportable are synonymous. As we explained in *Sosa-Valenzuela v. Gonzales*, —F.3d—, No. 05-9582, WL _____ (10th Cir. May 1, 2007),

> in 1996, when the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) amended the relevant statutes, the term "order of removal" replaced "order of deportation" throughout most, but not all, of the United States Code. *See Soberanes v. Comfort*, 388 F.3d 1305, 1308 n.1 (10th Cir. 2004), *Tang v. Ashcroft*, 354 F.3d 1192, 1194 n.3 (10th Cir. 2003). The two terms are coterminous when interpreting the statute.

[3] It is not even clear whether removal proceedings have been initiated thus far in this case. At oral argument, Hamilton's counsel represented that removal proceedings were underway but nothing in the record reflects this.

is no final order until the BIA acts."); *Abiodun v. Gonzales*, 461 F.3d 1210, 1217 (10th Cir. 2006) (refusing jurisdiction to consider alien's challenge to denial of naturalization petition because decision was rendered outside the scope of removal proceedings); *Tsegay v. Ashcroft*, 386 F.3d 1347, 1353 (10th Cir. 2004) (§ 1252(a)(1) did not confer appellate jurisdiction over procedural challenge to BIA's decision affirming immigration judge's denial of an asylum application).

No immigration judge has entered an order of removal in this case, much less has the BIA affirmed such a decision. All we have is a visa revocation order issued by the Regional Director at the Nebraska Service Center of the former INS, affirmed by the BIA on appeal.[4] While visa status is undoubtedly relevant to questions of removal or admissibility, a visa revocation order is not a final order of removal.

Because no order of removal has been entered in this case, absent some other statutory basis for jurisdiction, we lack jurisdiction under the INA to entertain this appeal.

## B. The Effect of Section 1252(a)(2)(D)

Hamilton nevertheless contends that the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, expanded circuit court jurisdiction under the INA.

---

[4] The Secretary of Homeland Security has authority to approve a visa petition pursuant to 8 U.S.C. § 1154. Under § 1155, the Secretary "may, at any time, for what he deems to be good and sufficient cause" revoke an approved petition.

Specifically, he urges us to base our jurisdiction on 8 U.S.C. § 1252(a)(2)(D), which Congress amended in 2005 to permit judicial review of "constitutional claims and questions of law." The section provides in full:

> Nothing in subparagraph (B) or (C), or in any other provision of this Act (*other than this section*) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D) (emphasis added).

Hamilton argues § 1252(a)(2)(D) should be construed as applying to removal and non-removal decisions alike, thus providing jurisdiction over the legal question presented here: whether a *nunc pro tunc* adoption decree issued by a state court is entitled to controlling weight under the INA. We disagree. In our view, a final order of removal is a prerequisite to the application of § 1252(a)(2)(D). The amended provision did not confer an expanded grant of jurisdiction but merely confirmed our authority to review "constitutional claims and questions of law," but only after a final order of removal has been entered. We reach this conclusion for three reasons.

*First*, § 1252(a)(2)(D) is naturally read as a limitation on the broad jurisdiction stripping provisions found in §§ 1252(a)(2)(B) and (C). By its plain language, however, the remaining limits on judicial review in "this section"—i.e., § 1252—still apply. *See* § 1252(a)(2)(D) ("Nothing in . . . any other provision of this Act (*other than this section*) which limits or eliminates judicial

review, shall be construed as precluding review of constitutional claims or questions of law."). Since § 1252(a)(1) limits circuit court review to a "final order of removal," such an order is a predicate to our authority to review constitutional claims or questions of law stemming from the agency act at issue.

The plain language of § 1252 is further supported by our case law. For example, in construing the scope of § 1252(a)(2)(D) in *Perales-Cumpean v. Gonzales*, 429 F.3d 977 (10th Cir. 2005), we explained it was only "made applicable to cases in which *the final administrative order of removal*, deportation, or exclusion was issued before, on, or after the date of enactment" of the REAL ID Act. *Id.* at 981–82 n.4 (emphasis added) (internal quotation marks omitted). Similarly, in *Schroeck v. Gonzales*, 429 F.3d 947 (10th Cir. 2005), we held that § 1252(a)(2)(D) provided jurisdiction to reach legal questions, but only in the context of a final administrative order of removal. Finally, in *Abiodun v. Gonzales*, 461 F.3d 1210, 1216–17 (10th Cir. 2006), we concluded that § 1252(a)(2)(D) did not preserve appellate jurisdiction over constitutional or legal challenges to the denial of an alien's naturalization petition because naturalization decisions are rendered outside the course of removal proceedings.[5]

---

[5] Hamilton suggests that § 1252(a)(5) supports his argument that legal claims can be reviewed absent a final order, pointing to language that states: "For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review . . . , and review pursuant to any other provision of law." 8 U.S.C. § 1252(a)(5). He argues this provision "makes it absolutely clear that the scope of the statute extends beyond [] final removal

(continued...)

-7-

*Second*, although Hamilton suggests the REAL ID amendment to § 1252(a)(2)(B), which added the language "regardless of whether the judgment, decision, or action is made in removal proceedings," supports expanded judicial review, that provision actually bolsters our view that an order of removal is a necessary condition to our jurisdiction. Section 1252(a)(2)(B) strips jurisdiction over decisions committed to agency discretion regardless of whether the decision is made in the removal process.[6] But that provision does not alter the fact that our jurisdictional grant comes from § 1252(a)(1) and, as we have discussed, § 1252(a)(1) requires an "order of removal." Thus, since a visa revocation decision is a discretionary act, our jurisdiction to review it is precluded by the plain meaning of § 1252(a)(2)(B) except when (1) the decision implicates

_____

[5](...continued)
orders." Pet. Response to Motion to Dismiss at 7. This reading is incorrect. Section 1252(a)(5) merely confirms that the *jurisdiction stripping* provisions in §§ 1252(a)(2)(B) and (C) apply in removal and non-removal actions alike. It does not support an expanded *grant of jurisdiction*.

[6] A visa revocation decision 'may' be made by the Secretary of Homeland Security (or his designee) "at any time, for what he deems to be good and sufficient cause." 8 U.S.C. § 1155. Employing conditional terms such as 'may' and 'at any time,' the statute uses language that is "indicative of administrative discretion." *Jilin Pharmaceutical USA, Inc. v. Chertoff*, 447 F.3d 196, 203 (3d Cir. 2006). *See also id.* at 204 (by authorizing visa revocation for "good and sufficient cause," the statute requires the agency to make a judgment call); *El-Khader v. Monica*, 366 F.3d 562, 567 (7th Cir. 2004) ("[T]he determination of whether there exists 'good and sufficient cause' [] necessarily is highly subjective, and there exist no strict standards for making this determination.")

-8-

constitutional or legal questions, and (2) there is a final order of removal.

*Schroeck v. Gonzales*, 429 F.3d at 981–82.[7]

   *Finally*, the legislative history of REAL ID provides useful context that

Congress intended § 1252(a)(2)(D) review to become effective only upon the

appeal of a final order of removal.  The House Report accompanying the proposed

revisions to the statute stated:

> Under section [1252(a)(2)(D)], all aliens *who are ordered removed* by
> an immigration judge will be able to appeal to the BIA and *then* raise
> constitutional and legal challenges in the courts of appeals . . .

H.R. Rep. 109-72, 174, 2005 U.S.C.C.A.N. 240 (emphasis added).  More broadly,

the legislative history indicates the changes to § 1252(a)(2)(D) were intended to

restore limited judicial review for criminal aliens facing removal, as

§ 1252(a)(2)(C) generally forecloses that right: "[N]o court shall have jurisdiction

to review any final order of removal against an alien who is removable by reason

of having committed a criminal offense covered in [the following sections] of this

title."  As the House Conference Report on REAL ID explains,

> Unlike AEDPA and IIRIRA, which attempted to eliminate judicial
> review of criminal aliens' removal orders section [1252(a)(2)(D)] would
> give  every  alien  one  day  in  the  court  of  appeals,  satisfying

---

[7] Some cases suggest a petitioner's *eligibility* for the visa in the first instance is a legal question under § 1252(a)(2)(D) over which we have plenary review upon the entry of a final order of removal.  *See*, *e.g.*, *Pinho v. Gonzales*, 432 F.3d 193, 203 (3d Cir. 2005) (carving out a distinction between the agency's power to grant or deny adjustment of status, which is discretionary, and its predicate determination of one's eligibility for adjustment of status, which is a legal question susceptible to judicial review).  That question is not before us since we conclude we lack jurisdiction.

constitutional concerns. The Supreme Court has held that in supplanting the writ of habeas corpus with an alternative scheme, Congress need only provide a scheme which is an "adequate and effective" substitute for habeas corpus. By placing all review in the courts of appeals, [REAL ID] would provide an "adequate and effective" alternative to habeas corpus.

H.R. Rep. 109-72, 175, 2005 U.S.C.C.A.N. 240 (internal citations omitted). These provisions support the conclusion that § 1252(a)(2)(D) allows judicial review over constitutional and legal challenges only when raised on appeal of a final order of removal.

In sum, the statutory language, the case law, and the legislative history all make clear that our authority to review constitutional claims and questions of law under § 1252(a)(2)(D) is constrained by the grant of jurisdiction provided by § 1252(a)(1), which requires a final order of removal. Because a visa revocation decision is not a final order of removal, we lack jurisdiction under the INA to consider Hamilton's claim.

**C. APA Review**

In the alternative, Hamilton argues that jurisdiction over his appeal is conferred by the generic provisions of the APA authorizing judicial review of agency action. 5 U.S.C. § 702. However, while the APA can provide a party with a right of judicial review of agency action, it does not confer independent jurisdiction to the circuit courts. *See*, *e.g.*, *Fostvedt v. United States*, 978 F.2d 1201, 1203 (10th Cir. 1992) (the APA "does not create an independent grant of jurisdiction for the review of agency actions"). Rather, a party seeking APA

review in federal court must identify a jurisdictional grant from either the enabling statute or one of the general jurisdiction provisions under Title 28 of the United States Code. *See, e.g., Califano v. Sanders*, 430 U.S. 99, 104–07 (1977).

The INA is the relevant enabling statute in this case (i.e., the agency revoked James Hamilton's visa pursuant to authority provided by the INA), and the INA limits circuit court jurisdiction to final orders of removal. *See* § 1252(a)(1). Moreover, the general jurisdiction statutes confer original jurisdiction over challenges to agency actions to the district courts, or to the Federal Circuit. *See* 28 U.S.C. § 1331 and § 1296, respectively. By contrast, circuit court jurisdiction is generally limited to review of final district court decisions and some interlocutory appeals. *See* 28 U.S.C. § 1291 and § 1292, respectively. Since we are faced with neither an appeal of a final district court decision nor an interlocutory appeal, we lack general jurisdiction to entertain this claim. Moreover, it follows that challenges to agency action under the INA seeking APA review must be filed in the appropriate district court or the Federal Circuit.[8]

Accordingly, the APA does not supply a basis for jurisdiction of this appeal.

---

[8] Hamilton's reliance on a Sixth Circuit case in support of APA jurisdiction reinforces this point. In *Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006), petitioners appealed *the district court's* dismissal of their APA claims against federal immigration officials. *Bangura* does not support the proposition that the circuit courts have original appellate jurisdiction under the APA in the face of the limitations contained in § 1252.

## IV. Conclusion

For the foregoing reasons, this appeal is dismissed for lack of jurisdiction.