**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 21, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ISSAM BENJAAFAR MARRAKCHI,

Plaintiff-Appellant,

v.

JANET NAPOLITANO, Secretary,
U.S. Department of Homeland
Security; ALEJANDRO MAYORKAS,
Director, U.S. Citizenship and
Immigration Services; ROBERT
MATHER, District Director, Denver
Field Office, U.S. Citizenship and
Immigration Services,

Defendants-Appellees.

No. 10-1527
(D.C. No. 1:09-CV-02252-REB-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Issam Benjaafar Marrakchi is a native and citizen of Morocco, seeking an adjustment of status that would allow him to remain in the United States. The government sought to remove him after he illegally entered the United States and was charged with alien smuggling and illegal entry. After a number of procedural delays, the government agreed to allow him to voluntarily depart. He did not do so, citing his inability to obtain a passport at the time. In any event, his order of removal was automatically reinstated, leading to the claims in this case.

He appeals the district court's dismissal of his complaint which sought to block two administrative decisions of the U.S. Citizenship and Immigration Services (USCIS). The first decision denied his application to adjust his status to that of a lawful permanent resident, and the second denied his motion to reconsider the first decision.

The district court dismissed his complaint and petition for lack of subject matter jurisdiction. The primary ground on which the court relied was that the USCIS's denial was a discretionary determination that Mr. Marrakchi should not be afforded adjustment of status. And, according to the court, 8 U.S.C. § 1252(a)(2)(B)(i) strips the necessary jurisdiction for judicial review of such discretionary determinations.[1]

_____

[1] The second ground for the court's dismissal was that, while Mr. Marrakchi sought relief from USCIS's denial of his request to adjust his status, what he really was seeking was judicial review of the validity of a removal order entered
(continued...)

We agree with the district court, and AFFIRM.

## I. Background

Mr. Marrakchi entered the United States on a visitor's visa in 1995 and subsequently overstayed and moved to Denver, Colorado. In 1998, Mr. Marrakchi and two other individuals attempted to enter the United States from Mexico at the San Ysidro port-of-entry near San Diego. He lacked proper documentation and claimed he had inadvertently entered Mexico while traveling to San Diego from Denver. Due to his lack of documentation and conflicting answers to questions from a Border Patrol agent, Mr. Marrakchi was placed into removal proceedings and charged with (1) being an alien smuggler under 8 U.S.C. § 1182(a)(6)(E)(i); (2) making a false claim to U.S. citizenship under 8 U.S.C. § 1182(a)(6)(C)(ii); and (3) not having a valid immigrant visa or entry document under 8 U.S.C. § 1182(a)(7)(A)(i)(I). An immigration judge dismissed the alien smuggling charge but sustained the other charges and ordered Mr. Marrakchi removed.

---

[1](...continued)
against him in 2004. The USCIS, in denying adjustment of status, ruled that Mr. Marrakchi was not legally eligible for adjustment of status because he had failed to voluntarily depart the United States after he previously had been granted voluntary departure. The district court held that "the relief Marrakchi seeks in his complaint implicates directly his order of removal because he seeks judicial review of the validity of that order." App. at 188. The court therefore held that Mr. Marrakchi's sole means of review was a petition for review with this court under 8 U.S.C. § 1252(a)(5).

Mr. Marrakchi's appeal of this decision was denied as untimely. Then, in 2001, Mr. Marrakchi married a U.S. citizen. On May 7, 2002, he appeared before a magistrate judge in federal court in Colorado and was charged with conspiracy to commit wire fraud and mail fraud. He was released on a cash bond with a variety of special conditions, including the surrender of his passport and an order not to leave Colorado.

On December 6, 2002, the Board of Immigration Appeals (BIA) granted a motion to reconsider Mr. Marrakchi's case and reinstated his appeal of his 1998 removal order. On September 29, 2003, the BIA agreed he had timely retracted his claim of being a United States citizen, overturning the finding that he had made a false claim of citizenship. But the BIA affirmed the finding that he was inadmissible as an alien not in possession of an immigrant visa or valid entry document. The BIA also concluded he was ineligible for an adjustment of status under the 2003 version of 8 C.F.R. § 1245.1(c)(8), which prevented any arriving alien in removal proceedings from receiving an adjustment of status.[2]

In November 2003, Mr. Marrakchi moved to reopen his removal proceedings so he could stay his removal and apply for voluntary departure.[3] In

---

[2]     The 2003 version of the subsection was later removed and the regulation was amended by renumbering, following invalidation of the subsection by several circuit courts.

[3]     Pursuant to a voluntary departure agreement, the government agrees to refrain from issuing a removal order provided an alien departs within a certain

(continued...)

-4-

his motion, he claimed he had the means to depart. He also disclosed he was facing criminal charges, but stated he expected them to be dropped. He did not disclose that he had surrendered his passport and had agreed not to leave Colorado.

On March 17, 2004, the BIA granted Mr. Marrakchi's motion to reopen and his request to depart voluntarily, giving him 30 days to do so. The BIA's order provided that if Mr. Marrakchi failed to depart, he would be removable per the immigration judge's 1998 order. He would also have to pay a fine and would be ineligible for numerous forms of immigration relief for 10 years.

Mr. Marrakchi posted a required departure bond, but he did not depart by April 17, 2004. Nor did he seek an extension of the voluntary departure agreement or inform the BIA he was unable to depart due to the terms of his bond order. On April 20, 2004, the Bureau of Immigration and Customs Enforcement (ICE) placed Mr. Marrakchi under an Order of Supervision.

Two years later, Mr. Marrakchi applied for an adjustment of status based on his marriage to a U.S. citizen. The criminal charges against him were dropped on February 27, 2008, but he did not depart the United States. USCIS denied

---

[3](...continued)
period of time. *See In re Bozena Zmijewska*, 24 I. & N. Dec. 87, 92 (BIA 2007). This allows the alien to avoid the adverse consequences of a removal order. *Id*. Marrakchi was ineligible for voluntary departure until the BIA overturned the finding that he had made a false claim of United States citizenship.

Mr. Marrakchi's application on February 6, 2009. USCIS found he was statutorily ineligible for an adjustment of status under 8 U.S.C. § 1229c(d)(1)(B) because he breached his voluntary departure agreement. USCIS also held he did not warrant the favorable exercise of discretion required for an adjustment of status. Mr. Marrakchi moved to reconsider, arguing he was prevented from departing under the terms of his bond order. USCIS denied this motion.

Mr. Marrakchi then filed a civil suit in federal court in Colorado, challenging USCIS's finding that he was ineligible for an adjustment of status. The district court dismissed his complaint, finding it had no jurisdiction per 8 U.S.C. § 1252(a)(2)(B)(i) because USCIS invoked its discretion when it denied his application for adjustment. The district court also held that because Mr. Marrakchi's failure to comply with his voluntary departure agreement automatically revived his 1998 removal order, his complaint was in effect challenging the validity of that removal order. The court found it lacked jurisdiction over a challenge to that order because under 8 U.S.C. § 1252(a)(5), the exclusive means for reviewing removal orders is a petition to a court of appeals. This appeal followed.

## II. Discussion

The resolution of this case turns on whether the district court erred in concluding it lacked jurisdiction over Mr. Marrakchi's complaint and petition because he was seeking review of a discretionary decision of the USCIS. Our

-6-

jurisdiction over immigration matters is set forth by statute, and those statutes limit our jurisdiction over a wide range of discretionary decisions by immigration agencies and officials. 8 U.S.C. § 1252(a)(2)(B).

We thus start with the denial of adjustment of status under 8 U.S.C. § 1255 to determine whether it is a discretionary decision we cannot review. According to 8 U.S.C. § 1252(a)(2)(B): "Notwithstanding any other provision of law . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review[] (i) any *judgment* regarding the granting of relief under section . . . 1255 [adjustment of status] of this title[.]" (emphasis added). Thus, on its face, this statute would seem to preclude *any* review of USCIS's judgment denying his adjustment of status.[4]

But, in *Sabido Valdivia v. Gonzales*, we joined other circuits in holding that § 1252(a)(2)(B)(i) "prohibit[ed] review only of those 'judgments' that are discretionary in nature." 423 F.3d 1144, 1149 (10th Cir. 2005) (quoting § 1252(a)(2)(B)(i)) (addressing whether jurisdiction existed to review a non-discretionary decision regarding § 1229b's continuous physical presence requirement). We found § 1252(a)(2)(B)(i) does not prohibit review of what are

---

[4]     Although 8 U.S.C. § 1252(a)(2)(D) permits review of legal and constitutional claims notwithstanding the jurisdiction-stripping provisions of § 1252(a)(2)(B), it applies only to petitions for review filed with appellate courts, and Mr. Marrakchi filed his case in district court. In addition, § 1252(a)(2)(D) applies only to petitions seeking review of a final order of removal. *See Hamilton v. Gonzales*, 485 F.3d 564, 566 (10th Cir. 2007).

essentially non-discretionary determinations. *Id*. We reasoned that in contrast, discretionary decisions require a judgment call by the agency and involve "no algorithm on which [appellate] review can be based." *Id.* (internal quotations omitted).

In the face of these limitations of § 1252, Mr. Marrakchi argues that the agency made no discretionary ruling in denying his adjustment of status. He relies on *Pinho v. Gonzales* for the proposition that applications to adjust status may be denied based on an exercise of discretion (a non-reviewable decision) *or* because the alien is legally ineligible for adjustment of status (a reviewable decision). *See* 432 F.3d 193, 203 (3d Cir. 2005) ("It is important to distinguish carefully between a denial of an application to adjust status, and a determination that an immigrant is legally ineligible for adjustment of status."). Mr. Marrakchi maintains that the agency's denial was solely based on statutory ineligibility, which is reviewable.

The language of the agency's denial letter, however, belies that position. The final three sentences of the USCIS's initial denial of Mr. Marrakchi's application read:

> In view of the fact that you are an alien who voluntarily failed to depart the United States per your voluntary departure agreement you are not eligible to apply for relief under section 245 of the Act. Your application is hereby denied. *Further, your adjustment of status application (Form I-485) has been denied since you do not warrant the favorable discretion required under section 245(a) of the Act.*

App. at 41 (emphasis added). Use of the word "further" to introduce the discretionary denial in the final sentence shows that the discretionary denial is beyond and in addition to the statement of ineligibility for statutory relief in the preceding sentence.

Mr. Marrakchi admits that if the denial of his application for adjustment of status was based solely on an exercise of discretion it would be unreviewable. *See* Aplt. Opening Br. at 21. But he argues no discretionary denial can exist in this case. Because a discretionary decision would have required the agency to balance "the adverse factors implicating Mr. Marrakchi's undesirability as a permanent resident against the social and humane considerations presented on his behalf" and, since the decision was "utterly devoid of any reasoning or enumeration of discretionary factors," it was not a discretionary decision. *Id*. at 24–25.

Mr. Marrakchi offers no legal authority, however, to support the proposition that the agency is required to set forth a discussion of particular factors in reaching a discretionary decision. Nor does he cite authority to support his claim that "[r]egardless of [the] reason that Defendants employed the 'discretion' language at the end of their decision, such a brief and summary statement does not suffice to convert the decision that was based on statutory eligibility into one based on discretion." *Id*. at 28. The two cases he does cite do not support this argument.

First, he points to *Singh v. Mukasey*, 536 F.3d 149 (2d Cir. 2008), citing its general holding that "decisions of the immigration courts can[not] be entirely insulated from appellate review simply by being labeled 'discretionary.'" *Id.* at 152. That general holding, however, is of no help to Mr. Marrakchi because the case is entirely distinguishable. *Singh* involved the Second Circuit's review of the BIA's denial of a motion to reopen—a motion the Supreme Court has held is reviewable for an abuse of discretion. *Id.* at 153 (citing *INS v. Doherty,* 502 U.S. 314, 323 (1992)). The government had argued that because the agency denied the motion to reopen as a matter of discretion, the appellate court lacked jurisdiction based on 8 U.S.C. § 1252(a)(2)(B)(ii) (which strips courts of jurisdiction to review any decision by the Attorney General that the statute specifically authorizes as in his discretion).

But the Second Circuit in *Singh* held that the appellate court was not deprived of jurisdiction simply because the appellate standard of review (as stated by the Supreme Court in *Doherty)* is abuse-of-discretion; appellate jurisdiction is precluded only where a statute specifically references the Attorney General's discretion in the matter. *Singh*, 536 F.3d at 154. Without statutory reference to the Attorney General's discretion, courts are not deprived of jurisdiction to review the decision. *Id.* It is in that context that the Second Circuit noted that if it were otherwise, the BIA could simply refuse to comply with any remand order and then insulate its refusal to comply with the appellate court mandate from

-10-

further review by stating its decision not to reopen was "discretionary." *Id.* at 154 (internal quotation marks omitted).

In contrast, this case involves review of the denial of an adjustment of status under § 1255—a decision the statute explicitly includes within the discretion of the Attorney General. 8 U.S.C. § 1255(a) ("The status of an alien . . . *may* be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]" (emphasis added)). Because of this specific statutory authorization of discretion (which was absent with regard to the motion to reopen under review in *Singh*), the USCIS's discretionary denial—regardless of its conclusory nature—is shielded from judicial review by 8 U.S.C. § 1252(a)(2)(B)(i). In light of this key difference, *Singh* is inapplicable.

The second case Mr. Marrakchi cites to support his argument, *Hernandez v. Ashcroft*, 345 F.3d 824 (9th Cir. 2003), is likewise distinguishable. *Hernandez* involved review of the denial of an adjustment of status. Similar to what happened here, the agency denied relief based on statutory ineligibility and also as a matter of discretion. But that is where the similarity ends. In *Hernandez*, the BIA declined, in its discretion, to adjust Mr. Hernandez's status based on the non-viability of his marriage, which case law had already established was not a permissible basis for denying relief. *Id.* at 846. Given that circumstance, the Ninth Circuit framed the jurisdictional question thus: "May the BIA insulate a

-11-

decision that is contrary to law from review by labeling such a decision discretionary?" *Id.* The court concluded that it could not, because the record was clear that the basis for the agency's discretionary denial was contrary to case law. In other words, the agency had no legal authority to make a decision contrary to law—it was required to exercise its discretion within the constraints of the law. Thus, when the agency acts without legal authority, it does not make a discretionary decision and the resulting decision is not insulated from judicial review. *Id.* at 847. The court concluded that "[b]ecause the decision made by the BIA was contrary to law, it was not discretionary and jurisdiction exists to review the determination." *Id.*

The key distinguishing factor between this case and *Hernandez* is that the record here is devoid of any reason to believe the agency acted "outside the constraints of the law" in its discretionary denial of relief. And we decline to extend *Hernandez* to a case like this one, where the record contains no indication that the agency based its discretionary denial on a legally impermissible basis. Applying *Hernandez* in such a way would require us to establish a framework by which an agency must announce its reasoning and rationale for a discretionary decision. None of our cases go so far, and we are not willing to adopt such a rule here.[5]

---

[5]     But USCIS is still bound by the provisions of the Immigration and

-12-

On the contrary, were we to require the USCIS to explain its reasoning, or if we reversed its decision because it was conclusory, we would be performing abuse of discretion review. *See Mickeviciute v. INS*, 327 F.3d 1159, 1162 (10th Cir. 2003) ("[An agency] abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements.") (internal quotations omitted). But we do not have jurisdiction to review the USCIS's discretionary denial of a § 1255 application for an abuse of discretion. This is further indication that a rule requiring the agency to state the reasoning behind its discretionary denial of relief would be inappropriate. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1232 (10th Cir. 2004) ("In view of the presumption of regularity attaching to administrative procedures . . . we will not assume, without any evidence, that BIA members do not follow the regulations or do not perform their jobs properly.")

We cannot know the agency's reasoning for its discretionary denial, because it was not stated. The dissent concludes that the strongest inference is that the denial was based solely on the legal conclusion of statutory ineligibility. To be sure, this is a possible inference. But whether it is the strongest inference

---

[5](...continued)
Nationality Act as well as precedential decisions of the BIA. *See* 8 C.F.R. §§ 103.10, 1003.10(d).

-13-

is irrelevant, because it is not the only possible inference.  For instance, we read

the denial letter as suggesting the discretionary denial, rather than being based on

the *legal* conclusion of statutory ineligibility, was based on the same *facts* that

formed the basis of the legal conclusion that Mr. Marrakchi was statutorily

ineligible for relief—namely, Mr. Marrakchi failed to voluntarily depart after

agreeing to do so.  The denial letter clearly stated why the agency concluded that

he failed to voluntarily depart:  his assertion that his failure to depart was

involuntary was not supported by the facts or evidence.

> You now claim that you were physically unable to depart due to an Order of Supervision issued on April 20, 2004, and thus you claim you did not "voluntarily" fail to depart.  This order was issued *after* the thirty (30) day period you were granted under the voluntary departure order.  You have given no reason as to why you did not depart prior to April 17, 2004. . . .  You have not provided any evidence to show that you were physically unable to depart the United States as you agreed to in the voluntary departure order.

App. at 41.  Based on the language in the denial letter, the agency could

reasonably conclude Mr. Marrakchi entered an agreement to voluntarily depart,

and then reneged on his agreement.  That would support a discretionary denial of

adjustment of status.[6]

---

[6]     The Second Circuit has held it retains jurisdiction over a denial of an adjustment of status application asserting both legal ineligibility and the exercise of discretion when the discretionary determination is based on the same grounds as the eligibility determination. *Ling Yang v. Mukasey*, 514 F.3d 278, 279–80 (2d Cir. 2008).  Here, there are reasons to conclude the USCIS based its decision on Marrakchi's failure to depart within the time he agreed to.  And, we decline to

(continued...)

-14-

In sum, we conclude that we lack jurisdiction under § 1252 to review the discretionary decision of the USCIS.

## III.  Conclusion

The judgment of the district court dismissing Mr. Marrakchi's case for lack of jurisdiction is AFFIRMED.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge

---

[6](...continued)
follow the Second Circuit's approach because, as just discussed, the USCIS does not have to articulate its reasons for a discretionary denial.

10-1527, <u>Marrakchi v. Napolitano</u>

**LUCERO**, J., dissenting.

When the United States Citizenship and Immigration Services ("USCIS") concludes that a noncitizen is legally ineligible for adjustment of status, federal courts retain jurisdiction to review the determination, notwithstanding our inability to review discretionary adjustment decisions. <u>Sabido Valdivia v. Gonzales</u>, 423 F.3d 1144, 1148-49 (10th Cir. 2005). Because I disagree that the agency may insulate a legal decision from our review simply by stating that the decision is discretionary, I dissent.

**I**

USCIS' letter denying Marrakchi's application to adjust his status is a full page long. All but the last sentence addresses Marrakchi's legal eligibility to adjust. As a preliminary matter, the letter notes that Marrakchi must show that he is statutorily eligible for relief. It then quotes § 240B(d) of the Immigration and Nationality Act, which provides that an alien who fails to voluntarily depart is ineligible for adjustment of status for a period of ten years. Next, the USCIS letter finds that Marrakchi failed to depart the United States pursuant to his voluntary departure order, and, citing <u>In re Bozena Zmijewska</u>, 24 I&N Dec. 87, 91 (BIA 2007), summarily rejects Marrakchi's argument that this failure was involuntary. Finally, the letter closes by stating:

> In view of the fact that you are an alien who voluntarily failed to depart the United States per your voluntary departure agreement you are not eligible to apply for relief under section 245 of the Act. Your application is hereby denied. <u>Further, your adjustment of status application . . . has been denied since you do not warrant favorable discretion under 245(a) of the Act.</u>

(emphasis added).

While acknowledging that the letter's final sentence is "conclusory," (Majority Op. 11), the majority nevertheless insists that the statement "is beyond and in addition to" USCIS' determination that Marrakchi is statutorily ineligible. (Majority Op. 9). I am not so convinced. Neither, apparently, was USCIS. In its subsequent letter denying Marrakchi's motion to reopen his application, USCIS explained that it "denied this application on February 6, 2009, due to [Marrakchi's] ineligibility to adjust status under the Immigration and Nationality Act."

Despite engaging in a lengthy legal analysis in the initial letter, USCIS never explains why Marrakchi's situation does not warrant favorable discretion. Nor does it consider countervailing factors that would "merit[] favorable exercise of administrative discretion," such as "family ties, hardship, length of residence in the United States, etc." Elkins v. Moreno, 435 U.S. 647, 667 (1978) (quoting Matter of Arai, 13 I&N Dec. 494, 496 (BIA 1970)). Specifically, USCIS does not address the fact that Marrakchi is married to a United States citizen. See Matter of Ibrahim, 18 I&N Dec. 55, 55 (BIA 1981) ("In the absence of other adverse factors, an application for adjustment of status as an immediate relative should generally be granted in the exercise of discretion."). Without some explication of its reasoning, the strongest inference is that Marrakchi did not warrant favorable discretion because USCIS found him legally ineligible for adjustment.

The question, however, is not whether USCIS must expressly set forth a particular analysis whenever it makes a discretionary decision, (see Majority Op. 9), but whether a single statement of the kind included in Marrakchi's initial denial letter is sufficient to

- 2 -

convert a decision seemingly predicated on a legal determination into one based on discretion.

No other court appears to have addressed this precise issue. In general, when interpreting immigration law, federal courts should construe restrictions on their own jurisdiction narrowly. See INS v. St. Cyr, 533 U.S. 289, 298 (2001); see also Traynor v. Turnage, 485 U.S. 535, 542 (1988) (reaffirming the "strong presumption that Congress intends judicial review of administrative action"). The importance of this rule has only increased in recent years, as evidenced by the Supreme Court's insistence that the Executive Branch does not "have a free hand to shelter its own [immigration] decisions from abuse-of-discretion appellate court review simply by . . . declaring those decisions 'discretionary.'" Kucana v. Holder, 130 S. Ct. 827, 840 (2010). Moreover, the Second and Ninth Circuits have concluded that "decisions of the immigration courts can [not] be entirely insulated from appellate review simply by being labeled 'discretionary.'" Singh v. Mukasey, 536 F.3d 149, 152 (2d Cir. 2008); see also Hernandez v. Ashcroft, 345 F.3d 824, 847 (9th Cir. 2003). In line with these decisions, I would hold that USCIS cannot shield its legal determinations from our review by appending a sentence stating that a noncitizen does "not warrant favorable discretion."

Hernandez is particularly applicable to the case at bar, although it involves a determination by the Board of Immigration Appeals, rather than by USCIS. Like Marrakchi, Hernandez sought to adjust her status. Hernandez, 345 F.3d at 841. Her legal eligibility to do so turned in part on whether she was the "spouse" of a lawful permanent resident ("LPR") of the United States. Id. at 841-42. Hernandez's husband was an LPR,

yet the Board denied her application to adjust because her marriage had "completely deteriorated." Id. at 845. This was tantamount to an eligibility determination and contrary to settled law. Id. at 846; see also United States v. Qaisi, 779 F.2d 346 (6th Cir. 1985) ("The word "spouses" in § 201(b) includes the parties to all marriages that are legally valid regardless of whether the INS thinks they are "factually dead" at the time of adjustment." (citing Dabaghian v. Civiletti, 607 F.2d 868 (9th Cir. 1979))). The Board, however, maintained that it could deny Hernandez's application on these grounds, "as a matter of discretion." Hernandez, 345 F.3d at 845. In effect, the Board "affixed the adjective 'discretionary'" to its legal determination, and then asserted that its "use of this adjective place[d the] decision beyond review." Id. at 846. The Ninth Circuit rejected the Board's argument and exercised jurisdiction over the case, concluding that the Board could not "insulate a decision that is contrary to law by labeling such a decision discretionary." Id. at 847.

The majority concludes that Hernandez is not on point because there is no indication in this case that USCIS' "based its discretionary denial on a legally impermissible basis." (Majority Op. 12). Marrakchi, however, does not claim that USCIS made a discretionary determination. Rather, he argues that USCIS cloaked a legal determination in the mantle of discretion, just as the Board did in Hernandez. The majority is not far off from this position when it hypothesizes that USCIS based both its statutory and discretionary denial on Marrakchi's failure to voluntarily depart. But if USCIS' legal analysis is faulty—if, as Marrakchi argues, he is exempt from the statutory adjustment bar pursuant to the "involuntariness" doctrine—then such a "discretionary"

- 4 -

determination here, like the Board's in <u>Hernandez</u>, would be contrary to law.  I think the federal courts must have jurisdiction to decide if this is the case.

Accordingly, I would hold that when USCIS appears to base an adjustment denial on a legal conclusion, the agency cannot strip the federal courts of jurisdiction to review that determination by simply declaring that discretion is unwarranted.

**II**

The district court also dismissed Marrakchi's case for lack of jurisdiction pursuant to 8 U.S.C. § 1252(a)(5), which provides that a "petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal."  The majority does not reach this issue, and I address it only briefly.

Our immigration system empowers two different entities to adjudicate an adjustment of status application.  Immigration Judges, subject to review by the Board of Immigration Appeals, decide adjustment applications for most noncitizens who are in removal proceedings.  8 C.F.R. § 1245.2(a)(1).  Applications from all other noncitizens are decided by USCIS.  8 C.F.R. § 245.2(a)(1).  Pursuant to interim regulations adopted by the Executive Office for Immigration Review in 2006, however, Marrakchi is among a small group of "arriving aliens" whose adjustment applications are within USCIS' exclusive jurisdiction, even though these noncitizens are in removal proceedings or have removal orders against them.  8 C.F.R. § 1245.2(a)(1)(ii); <u>see also</u> <u>Matter of Yauri</u>, 25 I. & N. Dec. 103, 107 (BIA 2009) ("[T]he existence of a final order of removal does

not preclude the USCIS from granting adjustment of status to an arriving alien who is otherwise eligible for adjustment of status.").

When USCIS denies an application for adjustment of status in a final agency action, the noncitizen typically requests relief in federal district court under the Administrative Procedure Act, as Marrakchi did here. See, e.g., George v. Napolitano, 693 F. Supp. 2d 125, 128, 130 n.3 (D.D.C. 2010); see also Isibor v. U.S. Dep't of Homeland Sec. Citizenship & Immigration, 10-1665-JST, 2011 WL 2433479 at *1 (C.D. Cal., June 14, 2011) (unpublished). But when an Immigration Judge or the Board denies an application in the process of entering a final removal order, § 1252(a)(5) applies, and the noncitizen's only recourse is to ask the Board to reopen or reconsider the matter, or to file a petition for review of the Board's order in a court of appeals.

The district court held that § 1252(a)(5) also applies in this case, even though USCIS adjudicated the application, because "the relief Marrakchi seeks in his complaint implicates directly his order of removal because he seeks judicial review of that order." I disagree. Marrakchi acknowledges that the removal order against him was correctly issued. Rather than challenge the validity of the order, Marrakchi argues that the penalties for failing to depart pursuant to the order—namely, the ten year bar from adjustment of status—should not apply under the "involuntariness" doctrine. This argument does not implicate § 1252(a)(5). Furthermore, if the district court does not have jurisdiction, it is not clear who would. This ambiguity is not only problematic from a pragmatic standpoint, but raises serious constitutional concerns. Because of the interim regulations, the Board cannot review USCIS' adjudication of an adjustment application

- 6 -

for a noncitizen in Marrakchi's position.  And the deadline for filing a petition for review with our court had long passed by the time he filed his adjustment application with USCIS.  8 U.S.C. § 1252(b)(1) (a petition for review must be filed "not later than 30 days after the date of the final order of removal").  Accordingly, I would hold that the district court had jurisdiction to hear this case.